UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

VICTOR QUINTANA, :

                        Petitioner, :

     - against - :

WILLIAM LEE, :

                        Respondent. :

------------------------------------------------------------x

**REPORT AND RECOMMENDATION TO THE HONORABLE PAUL G. GARDEPHE**[*]

12cv3204-PGG-FM

**FRANK MAAS**, United States Magistrate Judge.

       Pro se petitioner Victor Quintana ("Quintana") brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction, following a jury trial in Supreme Court, New York County, on charges of Criminal Impersonation in the First Degree and Robbery in the First and Second Degrees. On March 17, 2009, Justice Renee White, before whom the case was tried, sentenced Quintana, as a persistent felony offender, to concurrent terms that amount to an aggregate sentence of twelve years. Quintana is serving that sentence at the Green Haven Correctional Facility.

       In his petition, (ECF No. 2 ("Petition" or "Pet.")), Quintana incorporates by reference each of the four claims that he raised on direct appeal. Quintana thus asserts that his conviction should be set aside because (a) the jury's guilty verdict on the charge

---

[*] This Report and Recommendation was prepared with the assistance of Gregory Arutiunov, a student at the New York University School of Law.

of Robbery in the First Degree was against the weight of the evidence; (b) Justice White's Sandoval rulings violated his due process rights by unfairly preventing him from testifying; (c) Justice White violated his right to be present at all material stages of the trial by denying his request to attend sidebar conferences during voir dire; and (d) his sentence was unduly excessive. As set forth below, each of these claims lacks merit. Accordingly, Quintana's petition should be denied. In addition, because Quintana has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

I.   Factual and Procedural Background[1]

   A.   Trial

      1.   People's Case

The People's evidence at trial would have enabled a reasonable jury to conclude as follows:

On March 27, 2013, after having dinner and a few late night beers with friends, Liborio Rivera ("Rivera") returned to his home in the vicinity of 144th Street and Broadway in upper Manhattan. (Tr. 305-07). Just before reaching his building, Rivera heard someone behind him ask where he was going. (Id. at 316). After Rivera told the man that he was going home, the man stated that he was the "Police." (Id.). Rivera then

---

[1] "Tr." refers to the trial transcript; "S." refers to the transcript of Quintana's sentencing. (ECF No. 9 (Decl. of Ass't Att'y Gen. Paul M. Tarr, dated June 26, 2012 ("Tarr Decl.")), Exs. 9-2, 9-3). "Br." or "Appellate Brief" refers to Quintana's brief on direct appeal. (ECF No. 9-1). "Resp't's Mem." refers to the Respondent's memorandum of law in this proceeding. (ECF No. 10).

felt the man place a cold object against the back of the right side of his head, which he believed was a gun. (Id. at 318). At that point, a second man reached into Rivera's pockets, from which he stole a cell phone and approximately $200. (Id. at 319). Rivera then screamed that he was being robbed. (Id. at 316).

The armed individual eventually lowered the gun and grabbed Rivera's backpack from his shoulder. (Id. at 319-21).[2] Rivera fought with the man in an attempt to keep his backpack, but was unsuccessful. (Id. at 322). During the struggle, Rivera saw that the object was in fact a gun. (Id. at 320-21). Moments later, the armed man fled toward Amsterdam Avenue, while his accomplice ran in the opposite direction. (Id. at 325, 423-24).

Police Officers Ivan Rosario and John Jones witnessed at least some of the struggle. (Id. at 177, 188). They then apprehended Quintana approximately one block from the scene of the robbery, as he was attempting to hail a cab. (Id. at 199-200). A few seconds later, Rivera arrived at the site of the arrest, stating to the officers, "[w]here is my bag?" and "[t]hat's him." (Id. at 203).

Officer Jones frisked Quintana, but found no weapons on his person, nor was a gun ever located in the vicinity. (Id. at 393, 411). The police did, however, recover Rivera's backpack and some of its contents. (Id. at 407, 411).

---

[2] A bystander did not see Quintana point a gun at Rivera's head, but testified that Quintana had aimed "something" at Rivera's chest. (Id. at 427). He could not see that object because Quintana's jacket was in the way. (Id.).

2.  Defense Case

Detective Carmen Rodriguez was the sole defense witness. (Id. at 366, 527). Detective Rodriguez had interviewed Rivera after the robbery, at which time Rivera described the robber as a Hispanic man, dark skinned, "clean shaven," and approximately twenty-two years old. (Id. at 367-68). Detective Rodriguez also testified, however, that Rivera had described his assailant as having a "shadow on the lip," thus suggesting that he was "growing a mustache." (Id. at 373).

Quintana did not testify, but he was "display[ed]" to the jury at defense counsel's request. (Id. at 525-27).

B.  Verdict and Sentence

On February 26, 2009, the jury returned a guilty verdict on all three counts presented for their consideration. (Id. at 600-01). Thereafter, on March 17, 2009, Justice White sentenced Quintana, as a persistent violent offender, to concurrent prison terms of twelve years each on the first and second degree robbery counts and two to four years on the criminal impersonation count. (S. 9-10).

C.  Sandoval Hearing

Prior to Quintana's trial, Justice White issued a Sandoval ruling regarding the extent to which Quintana could be cross-examined about his prior bad acts if he testified. See People v. Sandoval, 34 N.Y.2d 371 (1974). Justice White determined that the prosecutor would be allowed to inquire into the general nature and dates of Quintana's three prior felony and eleven prior misdemeanor convictions, because they were relevant

4

to "his credibility."  (H. 16-17).  She refused, however, to allow the prosecutor to inquire into the facts underlying any of those convictions.  (Id.).[3]

>   D.   Subsequent History

In his brief before the Appellate Division, First Department, Quintana raised each of the four claims asserted in his Petition.  Quintana thus contended that (1) the jury's guilty verdict on the charge of Robbery in the First Degree was against the weight of the evidence; (2) Justice White's Sandoval ruling deprived him of due process by unfairly deterring him from testifying at trial; (3) Justice White deprived him of his right to be present at all material stages of the trial by denying his request to attend sidebar conferences during voir dire; and (4) his sentence was unduly harsh.

On January 18, 2011, the Appellate Division unanimously affirmed Quintana's conviction and sentence.  People v. Quintana, 914 N.Y.S.2d 630 (1st Dep't 2011).  With respect to the voir dire claim, the Appellate Division noted that "[a]ll questioning of prospective jurors took place in open court," and that there was "nothing in the record to suggest that [Quintana] lacked suitable opportunities to consult with his attorney about the panelists before each of [the] sidebars."  Id.

Turning to Quintana's weight of the evidence claim, the Appellate Division held that there was "no basis for disturbing the jury's credibility determinations" because

---

[3] The trial before Justice White was Quintana's second trial on these charges.  Prior to the first trial, a different Justice evidently had excluded "almost 10 of [Quintana's] misdemeanors and two of [his] felonies."  (Br. at 6, 32).

5

Rivera's "testimony established that [Quintana] displayed what appeared to be a firearm, as required under Penal Law § 160.15(4)." Id.

The Appellate Division also summarily rejected Quintana's Sandoval argument, stating that Justice White's "ruling d[id] not warrant reversal." Id. at 631.

Finally, the Appellate Division found "no basis for reducing [Quintana's] sentence." Id.

By letters dated February 10 and March 9, 2011, Quintana sought leave to appeal from the Appellate Division's decision. (See ECF No. 9-1, Ex. D). On June 15, 2011, Chief Judge Lippman of the New York Court of Appeals denied that request. People v. Quintana, 17 N.Y.3d 799 (2011). Quintana then timely filed his Petition on April 23, 2012. (ECF No. 2).

II.     Discussion

    A.     Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by AEDPA, provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was <u>contrary</u> to, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" 229 F.3d 112, 119 (2d Cir. 2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.

The standard set forth in Section 2254(d)(1) is "difficult to meet" for at least two reasons. <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (quoting <u>Metrish v. Lancaster</u>, 133 S. Ct. 1781, 1786 (2013)). First, the term "clearly established Federal law" applies only to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." <u>Id.</u> (quoting <u>Howes v. Fields</u>, 132 S. Ct. 1181, 1187 (2012)). Second,

because "an 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong[,] even 'clear error' will not suffice." Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)) (internal quotation marks omitted).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. § 2254(e)(1).

Although Section 2254 imposes a highly deferential standard of review, it does not require a federal court to defer blindly to every state court decision.  "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  Williams, 529 U.S. at 389.

B.     Exhaustion

Before he may pursue claims in federal court, a habeas petitioner must show either that he has exhausted all of his available state court remedies, or that there was an absence of state corrective process, or that circumstances rendered that process ineffective to protect his rights.  See 28 U.S.C. § 2254(b)(1).  As a defendant charged with crimes in New York State, Quintana unquestionably had effective processes available to him through the existing state statutes governing appeals and collateral challenges in criminal cases.  See N.Y. Crim. Proc. Law §§ 440.10 (motion to vacate judgment), 440.20 (motion to set aside sentence), 450.10 (direct appeal to Appellate Division as of right), 450.15 (discretionary appeal to Appellate Division from denial of motion to vacate judgment or to set aside sentence), 450.90 (discretionary appeal to Court of Appeals from adverse Appellate Division ruling).  There also is no indication of any circumstances that rendered these means of review ineffective in protecting his rights in this case.  Thus, to proceed with his federal claims, Quintana must show that he fully exhausted his state court remedies with respect to them.

To satisfy the exhaustion requirement, Quintana must show that he "fairly present[ed]" his federal claims "in each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  In New York, those "appropriate" state courts are the Appellate Division and the Court of Appeals.  Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005).

Quintana properly exhausted his claims that (1) the jury's verdict with respect to the charge of Robbery in the First Degree was against the weight of the evidence; (2) Justice White's erroneous Sandoval ruling unfairly deterred him from testifying; and (3) his sentence was unduly excessive. He failed to raise any federal claim, however, regarding his right to be present during the voir dire sidebars. Indeed, in that portion of his Appellate Brief, Quintana relied exclusively on state law cases and principles, without making any express reference to federal law. (See Br. at 22-28).

When a petitioner fails to exhaust a claim, a federal court nevertheless may deem it exhausted if it would be procedurally barred in the state court before which the petitioner would be required to present the claim. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1994); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). In that circumstance, although the petitioner will have satisfied the exhaustion requirement, his claim nevertheless will be considered "procedurally defaulted." See Sweet v. Bennett, 353 F. 3d 135, 139-41 (2d Cir. 2003).

Here, if Quintana were to return to state court, he would not be able to prosecute a federal claim arising out of his non-presence during certain sidebar conferences. Under New York law, he could not file a second direct appeal now that his conviction has become final. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991); N.Y. Ct. R. § 500.20. Nor could he file a motion for collateral review, since the issue could have been raised on direct appeal. See N.Y. Crim. Proc. Law § 440.10(2)(a). It follows

that Quintana's right-to-be-present claim, although deemed exhausted, is procedurally barred from habeas review.  See Coleman, 501 U.S. at 735 n.1.

In any event, even if this claim were not procedurally barred, it would not entitle Quintana to habeas relief in federal court.  Quintana's right to be present during voir dire sidebars derives from the New York Court of Appeals' decision in People v. Antonmarchi, 80 N.Y.2d 247, 250 (1992).  As that court subsequently has noted, however, the right to be present during a voir dire sidebar is not rooted in the United States Constitution, but in New York Criminal Procedure Law.  People v. Vargas, 88 N.Y.2d 363, 376 (1996).  Under federal law, a defendant does not have the same right to attend sidebar conferences.  See, e.g., Cox v. Ebert, No. 06 Civ. 3159 (PAC) (JCF), 2007 WL 2948160, at *21 (S.D.N.Y. Oct. 10, 2007) (citing United States v. Feliciano, 223 F.3d 102, 111 (2d Cir. 2000), and Morales v. Artus, No. 05 Civ. 3542 (BSJ) (AJP), 2006 WL 3821488, at *18 (S.D.N.Y. Dec. 28, 2006)); Diaz v. Herbert, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004).  Accordingly, because that claim arises solely under state law, it affords Quintana no basis for habeas relief.  See Diaz, 317 F. Supp. 2d. at 473.

    C.    Sandoval Claim

Quintana next contends that Justice White abused her discretion through her Sandoval ruling permitting the prosecutor to inquire into fourteen of his prior convictions at trial.  (Pet. at 8; Br. at 29-35).  Quintana maintains that this ruling deterred him from testifying in his own defense, thereby depriving him of his due process right to a fair trial.  Id.  Notwithstanding these assertions, it is well established that "Sandoval claims are

11

barred from habeas review where, as here, the petitioner failed to actually take the stand and testify at trial." Wilson v. Heath, 938 F. Supp. 2d. 278, 287 (N.D.N.Y. 2013) (collecting cases); McEachin v. Ross, 951 F. Supp. 478, 481 (S.D.N.Y. 1997); Peterson v. LeFerve, 753 F. Supp. 518, 521 (S.D.N.Y. 1991); see also U.S. v. Washington, 746 F.2d 104, 106 (2d Cir. 1984) (to preserve issue for review on direct appeal, a federal criminal defendant must, at least by means of an attorney proffer, establish that he would take the stand if the challenged convictions were excluded and explain what he would say). Having failed to testify at his trial, Quintana cannot challenge Justice White's Sandoval ruling in this forum. Wilson, 938 F. Supp. 2d at 287. Indeed, because he did not testify, any suggestion that he was prejudiced by the Sandoval ruling is purely speculative. For these reasons, Quintana's Sandoval claim necessarily fails.

D. Weight of the Evidence

Quintana also contends that his conviction on the charge of Robbery in the First Degree was against the weight of the evidence. (Pet. at 9). Notably, such a "challenge to a verdict based on the weight of the evidence is different from a challenge based on the sufficiency of the evidence." Minigan v. Donnelly, No. 01-CV-0026A (VEB), 2007 WL 542137, at *13 (W.D.N.Y. Feb. 16, 2007) (emphasis in original), report and rec. adopted, 2007 WL 981762 (W.D.N.Y. Mar. 30, 2007).

A weight-of-the-evidence claim requires the reviewing court to "weigh the relative probative force of conflicting testimony and relative strength of conflicting inferences that may be drawn from the testimony." People v. Bleakley, 69 N.Y.2d 490,

495 (1987) (internal citations and quotations omitted).  In a criminal trial, however, the jury is the sole arbiter of witness credibility.  Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994); United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993).  Moreover, "a habeas court must defer to the assessments of the weight of the evidence and credibility of the witnesses that were made by the jury." Frazier v. New York, 187 F. Supp. 2d 102, 109-10 (S.D.N.Y. 2002) (citing Herrera v. Collins, 506 U.S. 390, 401 (1993)).  It therefore is well-established that "weight of the evidence" claims are not cognizable on habeas review.  See Givens v. Burge, No. 02 Civ. 0842 (JSR) (GWG), 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases); Garbez v. Greiner, No. 01 Civ. 9865 (LAK) (GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (weight of the evidence claims are based purely in state law).  Consequently, whatever the merits of Quintana's weight-of-the-evidence claim might have been in state court, he cannot pursue that claim in this proceeding.

Moreover, even if Quintana's claim were to be construed as a sufficiency of the evidence claim, it is clear that he would not be entitled to relief.  To prevail on a sufficiency claim, a habeas petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Bossett, 41 F.3d at 830 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)).  In considering such a claim, a habeas court thus must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor.  Jackson, 443 U.S. at 326.  For this reason, even "the testimony of a single, uncorroborated eyewitness is generally sufficient to

13

support a conviction." United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); see also Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) (following Danzey even though the testimony and character of the sole witness who directly implicated the petitioner were "less than inspiring"); Means v. Barkley, No. 98 Civ. 7603(DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000) (applying Danzey and noting that habeas court may set aside conviction only if testimony is "incredible as a matter of law").

Under New York law, an individual is guilty of Robbery in the First Degree if he forcibly steals the property of another, and, in the course of committing the robbery or fleeing therefrom, he either (i) causes serious physical injury to another person, (ii) is armed with a deadly weapon, (iii) uses or threatens immediate use of a dangerous instrument, or (iv) displays what appears to be a firearm. N.Y. Penal L. § 160.15(4) (emphasis added). At trial, Rivera, the victim of the robbery, testified that Quintana stole his backpack at gunpoint. This testimony alone was sufficient to satisfy the elements of Robbery in the First Degree. Accordingly, even if Quintana sought to assert an insufficiency of the evidence claim in this forum, his claim would not entitle him to any relief.

### E. Excessive Sentence Claim

Finally, Quintana contends that his twelve-year sentence was excessive. (Pet. at 11). It is well settled that "[n]o federal constitutional issue is presented" when a petitioner's sentence falls within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, Quintana was convicted on charges of Robbery in

the First Degree, a Class B violent felony for which the maximum sentence in New York is twenty-five years; Robbery in the Second Degree, a Class C violent felony for which the maximum sentence is fifteen years; and Criminal Impersonation in the First Degree, a Class E felony for which the maximum sentence is four years.  See N.Y. Penal L. §§ 70.00(2)(e), 70.02(1)(a),(b), (3)(a),(b),(d), 190.26.  Each of Quintana's sentences fell within these statutory limits.  Moreover, Justice White provided that he was to serve his sentences concurrently.  For these reasons, Quintana's excessive sentence claim presents no federal constitutional question.

III.   Conclusion

For the foregoing reasons, Quintana's Petition should be denied. Additionally, because Quintana has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253, a certificate of appealability should not issue.

IV.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York

10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Gardephe. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

Dated:	New York, New York
	November 18, 2014

	_____
	FRANK MAAS
	United States Magistrate Judge

Copies to:

Victor Quintana (via U.S. mail)
09-A-1641
Green Haven Correctional Facility
P.O. Box 400
Stormville, New York 12582

Counsel for the Respondent (via ECF)